# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK BUTLER,  :  <br>     Plaintiff,  : <br> : <br> v.  : <br> : <br> LEHIGH COUNTY JAIL, *et al.*,  : <br>     Defendants.  : | CIVL ACTION NO. 22-CV-0229 |

### MEMORANDUM

**SÁNCHEZ, C.J.**                                                              **FEBRUARY 15, 2022**

    Plaintiff Patrick Butler, a pretrial detainee incarcerated at the Lehigh County Jail ("LCJ"), filed this civil rights action against several government officials based on the conditions of his current confinement, in particular, his inability to attend Jumu'ah services that are required by his Muslim faith. Butler also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Butler leave to proceed *in forma pauperis* and dismiss his claims except for his Free Exercise claim, Equal Protection claim, and RLUIPA claim against Lehigh County based on LCJ's alleged failure to provide Jumu'ah services.

## I.    FACTUAL ALLEGATIONS[1]

    The Complaint names the following Defendants in their individual and official capacities: (1) LCJ; (2) the City of Allentown; (3) Kyle Russell, Warden of LCJ; (4) Janine Donate, Director of LCJ; (5) Michael Salter, identified as "Religious Manager" for LCJ; (6) Douglas Mette, identified as "Treatment Manager" for LCJ; (7) Steven Miller, also identified as a "Treatment Manager" for LCJ; (8) Governor Tom Wolf; (9) Lehigh County; (10) "All Housing Unit Officers Working at LCJ Carrying Out the Discrimination Policy 2020-Present"; and (11) "The City

---

[1] The facts set forth in this Memorandum are taken from the Complaint and attached exhibits.

Council of Allentown whoever is in charge of the Director/Warden under municipal liability." (ECF No. 2 at 2-5.)[2]  The primary basis for Butler's Complaint is his allegation that during his detention he has been "arbitrarily prevented" from going to Jumu'ah prayers on Fridays.[3]  (*Id.* at 7; *see also id.* at 16.)  He alleges that Jumu'ah prayers are an obligatory requirement of his religion and that not being able to attend violates a tenet of his faith.  (ECF No. 2 at 7.)

As exhibits to his Complaint, Butler attached grievances that he filed about this issue.  On November 25, Butler filed a grievance seeking to "be put on Jumu'ah list" and received a response that "there are currently no Jumah [sic] classes."  (*Id.* at 18.)  Thereafter, on December 14, he filed a second grievance stating that as a Muslim, he holds a sincere religious belief that he is obligated to attend Jumu'ah congregational prayer each Friday and that LCJ's failure to provide these prayers violates his rights, especially since two "outside volunteers came in to hold Christian based programming between the dates of November and December."  (*Id.* at 16.)  Butler's grievance was denied for failure to provide "an event date and time."  (*Id.* at 17.)  Butler unsuccessfully appealed the denial of his grievance.[4]  (*Id.* at 15.)  He avers that he was discouraged from filing these grievances and "threatened by numerous defendants" although he does not elaborate on this allegation.  (*Id.* at 7.)

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] Jumu'ah is a weekly Muslim congregational service that must be held every Friday after the sun reaches its zenith and before afternoon prayer.  *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 345 (1987).

[4] At the screening stage, the Court does not address whether Butler has properly exhausted administrative remedies with respect to the grievances he filed.  *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002) ("[N]o provision of the PLRA requires pleading exhaustion with particularity.").

Relatedly, the Complaint alleges that Butler sought to pray in the counselor room "with other Muslim brothers" but that he was not permitted to do so and is instead forced to pray "1 foot from a toilet 5 times a day." (*Id.*)  Butler notes that "Christian programming and other treatment classes" are available during the time he sought to attend Jumu'ah, yet he is not provided an option for this religious exercise. (*Id.*)  He also alleges, as he did in his grievance, that Christian inmates are permitted to use the counselor room "with outside volunteers who come in with guitars and literature." (*Id.*)

Butler avers that he was told to "stop" while offering Salah, which the Court understands to be a reference to Muslim prayer, "by numerous defendants many times." (*Id.*)  On one occasion, an unidentified guard allegedly ordered him to remove his underwear during prayer. (*Id.*)  Butler claims he was "told he would be put in the hole and forgotten about" in retaliation for filing a grievance about that incident. (*Id.*)  He also contends that he is not permitted to purchase a prayer rug "per the LCJ policy" even though rosaries are available "for free." (*Id.*)  Butler does not elaborate on this alleged policy.

Based on these allegations, Butler brings claims pursuant to 42 U.S.C. § 1983 for retaliation, violation of the Establishment Clause, violation of his free exercise rights, violation of his substantive due process rights, and violation of his equal protection rights. (*Id.* at 4.)  Butler also brings claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[5]  (*Id.*)  He claims that as a result of the events described in the Complaint, he

---

[5] Butler indicates his intention to assert a "common law breach of contract claim." (ECF No. 2 at 4.)  However, the Court cannot discern any possible legal basis for such a claim based on the facts alleged.  Butler also indicates his intent to raise claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which provides a constitutional remedy for violations committed by federal actors in limited circumstances, but he has not sued any federal actors, so there is also no legal basis for any *Bivens* claims. The Court will therefore dismiss these claims as legally baseless. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

suffered from post-traumatic stress disorder, anxiety, depression, and emotional distress. (*Id.* at 8.) Butler seeks "immediate reinstatement of Jumu'ah," a "change [to] all religious policies to fair and equal treatment of all faiths," and damages. (*Id.*)

## II.   STANDARD OF REVIEW

The Court grants Butler leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which requires the Court to dismiss the Complaint if, among other things, it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not

---

[6] However, as Butler is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

suffice. *Iqbal*, 556 U.S. at 678. As Butler is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

#### A. Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

5

To plead a basis for liability against a municipal entity under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

1. **Improper Defendants**

Although Butler has named several officials at LCJ who could potentially be involved in the events giving rise to his claims, he has also included Defendants for whom there is no basis for liability at all. For instance, Butler has named Governor Tom Wolf as a Defendant but there

is no apparent legal basis for holding Governor Wolf liable, whether in his individual or official capacity, for LCJ's alleged failure to accommodate Butler's religious rights or the other acts described in Butler's Complaint.  Since LCJ is operated by Lehigh County and not by the City of Allentown, there is also no legal basis for the City of Allentown's liability here.  *See* https://www.lehighcounty.org/Departments/Corrections (last viewed Feb. 2, 2022).[7]  The same is true for the Defendant identified as "[t]he City Council of Allentown whoever is in charge of the Director/Warden under municipal liability."  Furthermore, there is no legal basis for claims against the LCJ because a jail is not a "person" under § 1983 and therefore is not subject to liability under the statute.  *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009).  For these reasons, all claims against Defendants Wolf, City of Allentown, "[t]he City Council of Allentown whoever is in charge of the Director/Warden under municipal liability," and LCJ will be dismissed with prejudice.

### 2. Failure to Allege Personal Involvement

The Complaint fails to state a claim against Kyle Russell, Janine Donate, Michael Salter, Douglas Mette, Steven Miller, and "All Housing Unit Officers Working at LCJ Carrying Out the Discrimination Policy 2020-Present."[8]  As noted above, an individual must be personally

---

[7] The Court may take judicial notice of the information published on a government website.  *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017) ("To the extent that we rely on information beyond what the government included in its amicus brief, that information is publicly available on government websites and therefore we take judicial notice of it.").

[8] To the extent these Defendants are sued in their official capacities, any such claims are dismissed as duplicative of the claims against Lehigh County.  *See Stanek v. St. Charles Cmty.*

involved in violating a plaintiff's rights to be liable under § 1983. However, the Complaint does not describe how any of these individuals violated Butler's rights. Although Butler at times alleges that the "defendants" engaged in certain conduct, where there are multiple events and defendants at issue, a plaintiff generally cannot state a claim by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"). It is possible that Butler sued Defendants Russell, Mette, and Salter for their handling of his grievances, which were denied, (ECF No. 2 at 15-18), but participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on

---

*Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

those later grievance reviews."). Accordingly, the claims against these Defendants will be dismissed without prejudice.

### 3. Failure to Allege Substantive Due Process Violation

As Butler is a pretrial detainee, the Fourteenth Amendment applies to his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). "Unconstitutional punishment [under the Fourteenth Amendment] typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious" and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, a detainee generally must allege that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). Although Butler indicates his intention to raise a substantive due process claim, it is unclear what conditions he might be challenging on a due process basis[9] or

---

[9] Butler's allegations are predominately grounded in his assertion that he is being denied his religious rights, so his claims are best analyzed under the First Amendment, which guarantees freedom of religion, rather than the Due Process Clause. *See generally Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not

how any of the named Defendants are involved.[10] Accordingly, any substantive due process claims are dismissed without prejudice.

### 4. Failure to Allege Retaliation

To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). A prisoner's filing of a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *Id*.

Butler alleges that a guard ordered him to take his underwear off during prayer and was told he "would be put in the hole and forgotten about" in retaliation for filing a grievance about that incident. (ECF No. 2 at 7.) He also alleges that he was discouraged from filing grievances and "threatened by numerous defendants." (*Id.*) However, he does not develop these allegations or link them to any of the named Defendants. Accordingly, Butler has not stated a retaliation claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent

---

the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotations omitted)); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-provision rule" pursuant to which claims should be analyzed under the standards relevant to the more specific provision of the Constitution under which that claim falls, rather than under the Due Process Clause as a catch all).

[10] Even assuming being made to remove his underwear during prayer could give rise to a due process claim, this allegation is not tied to any particular Defendant.

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### 5. Free Exercise and Equal Protection Claims

The First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.[11] *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone*, 482 U.S. at 348 ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). "[O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if

---

[11] The First Amendment also prohibits the government from establishing a religion. Although Butler cites the Establishment Clause in his Complaint (ECF No. 2 at 4), his Complaint does not support an Establishment Clause violation because he has not plausibly alleged that any of the Defendants failed to act with a secular purpose, acted in manner that primarily advanced or inhibited religion, or impermissibly fostered an excessive entanglement with religion. *Travillion v. Leon*, 248 F. App'x 353 (3d Cir. 2007) (*per curiam*); *see also Young v. Beard*, 284 F. App'x 958, 963 (3d Cir. 2008) (acknowledging that there is space between the Free Exercise and Establishment Clause and that "because the Free Exercise Clause requires the government to make reasonable religious accommodation for its prisoners," prisons may offer religious programming without advancing or endorsing religion). It is also not clear that Butler has standing to bring an Establishment Clause claim here. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 817 (8th Cir. 2008) (concluding that inmate lacked standing to bring Establishment Clause claim: "Nowhere does he allege that he altered his behavior or had direct, offensive and alienating contact as a result of the accommodation of Jewish religious beliefs in the prison"); *Abdul-Aziz v. Lanigan*, No. 17-2806, 2020 WL 3287229, at *10 (D.N.J. June 18, 2020) (dismissing inmate's Establishment Clause claim on screening where inmate failed to allege any facts showing he was injured by religious accommodations provided to other inmates and sought accommodation of his own religious practices).

it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). There are four factors to consider in the *Turner* analysis:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it . . . . A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates . . . . A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally . . . . Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (alterations in original). The *Turner* analysis is equally applicable to equal protection claims in this context. *DeHart*, 227 F.3d at 61 ("DeHart cannot obtain relief if the difference between the defendants' treatment of him and their treatment of Jewish inmates is 'reasonably related to legitimate penological interests.'"); *Williams v. Sec'y PA Dep't of Corr.*, 541 F. App'x 236, 239-40 (3d Cir. 2013) (*per curiam*) ("Williams's free exercise and equal protection claims required him to prove that defendants' conduct was not 'reasonably related to legitimate penological interests' under the four factors set forth in *Turner*."). However, this analysis does not apply when a prisoner does not allege "that there is a prison policy impinging on his First Amendment rights." *Garraway v. Lappin*, 490 F. App'x 440, 445 (3d Cir. 2012) (*per curiam*). Additionally, "[i]n the prison context, a central First Amendment inquiry is 'whether the inmate has alternative means of practicing his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice.'" *Shelley v. Metzger*, 832 F. App'x 102, 104 (3d Cir. 2020) (*per curiam*) (quoting *Fraise v. Terhune*, 283 F.3d 506, 518 (3d Cir. 2002)).

Liberally construing the Complaint, the Court understands Butler to be alleging that LCJ does not offer Jumu'ah services to Muslim inmates even though it offers Christian inmates programming and space for their religious exercise. Butler alleges that this practice violates his

free exercise and equal protection rights because attending Jumu'ah is required by his religious faith. At this early stage of the litigation, the Court will direct service of this claim on Lehigh County for a responsive pleading. *See Ali v. Carney*, No. 20-4320, 2020 WL 7335466, at \*4 (E.D. Pa. Dec. 14, 2020) ("As Ali asserts that he was not permitted to attend services while others of other faiths were not so restricted, his Free Exercise claim passes § 1915 screening.").

Butler also alleges that he has been prevented from offering Salah "by numerous defendants many times." (ECF No. 2 at 7.) However, he does not describe who was involved in these incidents, when they occurred, or what happened, so as to state a plausible claim against any of the Defendants. He also fails to allege that this conduct stemmed from a municipal policy or custom so as to state a basis for municipal liability. Accordingly, the Court concludes that Butler has also failed to state a free exercise claim with respect to this allegation. Nor has Butler stated a free exercise or equal protection claim with his allegation that he is "not permitted to purchase a prayer rug from canteen but rosaries are available for free" since this allegation is too undeveloped to be plausible. It is also not clear how the inability to purchase a prayer rug prevents Butler from practicing his religion. In sum, these additional allegations are too vague and generalized to state a plausible constitutional claim against any of the Defendants.

### B. RLUIPA Claims

Butler also brings claims under RLUIPA. "Congress enacted RLUIPA . . . 'in order to provide very broad protection for religious liberty.'" *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)); *see* 42 U.S.C. § 2000cc, *et seq.* The relevant portion of RLUIPA "states that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,' unless the government

13

demonstrates that the burden is 'in furtherance of a compelling governmental interest" and is 'the least restrictive means of furthering that . . . interest.'" *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (quoting 42 U.S.C. § 2000cc-1(a)). "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* at 280. RLUIPA does not provide a basis for claims against individual officials in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

As noted above, Butler alleges that he has been prevented from exercising his sincerely held belief that he must attend Jumu'ah services because such services are not offered at LCJ. At this early stage of the litigation, the Court will direct service of this claim on Lehigh County for a responsive pleading.[12] *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 117 (3d Cir. 2017) (*per curiam*) ("The feasibility of a religious accommodation usually is a fact-intensive inquiry"). Any RLUIPA claims for damages or against individual Defendants will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Butler leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)

---

[12] For the same reasons stated above regarding Butler's Free Exercise claims, any remaining RLUIPA claims fail because Butler has failed to plead sufficient facts about the who, what, where, when and why of his claims so as to render them plausible. In other words, his claims are too vague and generalized to pass screening. Additionally, the Court will dismiss any RLUIPA claims against the Defendants in their official capacities as duplicative of Butler's RLUIPA claims against Lehigh County.

with the exception of his Free Exercise claim, Equal Protection claim, and RLUIPA claim against Lehigh County based on the failure to provide Jumu'ah services.  All claims against Defendants Wolf, City of Allentown, "[t]he City Council of Allentown whoever is in charge of the Director/Warden under municipal liability," and LCJ will be dismissed with prejudice.  All other claims the Court has dismissed are dismissed without prejudice.  Butler will be given the option of proceeding at this time on his remaining claims or filing a comprehensive amended complaint.  An appropriate Order follows, which provides further guidance to Butler about his options for proceeding.[13]

**BY THE COURT:**

**/s/ Juan R Sánchez**
**JUAN R. SÁNCHEZ, C.J.**

---

[13] The court will not address Butler's pending "Petition for Appointment of Counsel & Summary Judgment" until Butler either indicates his preference to either proceed on his remaining claims or files an amended complaint.